NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SONIA L., | ) | |
| | ) | Supreme Court No. S-15329 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-12-00012 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1526 – December 10, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Dianne Olsen, Law Office of Dianne Olsen, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

_____

\*      Entered under Alaska Appellate Rule 214.

1. We have before us a mother's appeal of the superior court's order terminating her parental rights to her daughter.[1] The superior court determined that by severely beating the daughter in 2010 and severely spanking her in late 2011, the mother had caused substantial physical harm.[2] The court also concluded that the mother's pattern of hitting, beating, and threatening her daughter had caused her to suffer a mental injury — post-traumatic stress disorder.[3] The mother appeals three of the court's termination findings: (1) that she had not remedied her conduct within a reasonable time; (2) that the Office of Children's Services (OCS) made reasonable efforts to reunify the family; and (3) that it is in the daughter's best interests to terminate her mother's parental rights.[4]

---

[1] Under Alaska Child in Need of Aid (CINA) Rule 18(c), parental rights may be terminated at trial only if the State shows the following by clear and convincing evidence: (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011; (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) reasonable efforts have been made to provide family support services designed to prevent the breakup of the family. The State is also required to show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[2] *See* AS 47.10.011(6).

[3] *See* AS 47.10.011(8)(A).

[4] Whether a parent failed to remedy conduct or the conditions that placed a child at substantial risk of harm is a factual finding. *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 428 (Alaska 2012) (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)). Whether OCS made reasonable efforts to reunify a family is a mixed question of fact and law. *Id.* (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)). Best interests determinations are factual findings. *Id.* (citing *Christina J.*, 254 P.3d at 1104). We will

2. After first considering the mother's appeal, we issued an order remanding for further findings on the third issue:

> The first two contested findings are well supported by the record. The mother contributed to the daughter's mental health problems and was unable to develop sufficient empathy with the daughter to allow the daughter to be comfortable in the mother's presence; this is sufficient to support the superior court's finding that the mother had not remedied her conduct within a reasonable time. At the same time, OCS was constrained in allowing the mother continued visitation with the daughter in light of professional recommendations to the contrary; despite the mother's argument, OCS's refusal to allow the visitation is not enough to overturn the superior court's finding that OCS made reasonable efforts to reunify the family.
>
> We turn next to the best interests finding. Based on testimony from the daughter's therapist, about three months before the termination trial began, the superior court concluded that further visitation with the mother would not be in the daughter's best interests. Then shortly before the termination trial, the daughter's therapist determined that the daughter would probably need years of residential treatment followed by years of placement in a therapeutic foster home.
>
> At the termination trial, the mother's therapist testified that the mother would be able to work with her daughter if [the daughter] were placed in a residential treatment program that offered family therapy. But the mother's therapist was unable to offer an opinion about whether such contact would be in the daughter's best interests.

---

affirm factual findings that are not clearly erroneous. *Id*. at 427 (citing *Christina J.*, 254 P.3d at 1103). A finding is clearly erroneous if, after reviewing the entire record, this court feels definitely and firmly that the finding is mistaken. *Id*. at 427-28 (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)). We review legal questions de novo. *Id*. (citing *Christina J.*, 254 P.3d at 1104).

The superior court was concerned about this information and asked the parties to provide briefing on "what is in the best interest of a child where there . . . is . . . this long period of therapeutic care for the child's own need. [Tell me w]hat that means as far as the best interest of the child in a termination hearing." But the parties did not respond to the court's request.

The superior court thus recognized that the necessity for a long period of therapeutic care was a critical issue in its analysis of the best interests of the child. We generally require a superior court's findings to clearly and explicitly resolve all critical issues and disputes. In this case, it is difficult for us to evaluate the ultimate best interests finding without more specific findings regarding the long period of recommended residential treatment and therapeutic foster care.

We therefore REMAND this matter to the superior court for specific findings on the question whether it is in the daughter's best interests to terminate her mother's parental rights in view of the long period of recommended residential treatment and therapeutic foster care. The superior court in its discretion may conduct further proceedings to make these findings. We retain jurisdiction.[5]

3. The superior court issued the requested supplemental findings based on the existing record, reiterating that the preponderance of the evidence supported the finding that it was in the daughter's best interests to terminate her mother's parental rights. The court found that the daughter has "deeply rooted and severe problems beyond the scope and capability of [her mother] to reasonably address in either the near, intermediate, or long term future." The court found that "although [the mother's] love is genuine, she clearly lacks the ability to understand, care, and provide for [her

---

[5] *S.L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-15329 (Alaska Supreme Court Order, June 18, 2014) (footnote omitted).

daughter]" and that the mother does not have the capacity to deal with her daughter's mental disorder. The court found that "it is more probable than not that [the mother] will not be able to have a healthy relationship with [her daughter] at this time or any foreseeable time in the future." The court found that the daughter needs lengthy inpatient treatment, noted that the mother "failed to adduce any evidence that participation by [her] is even possible, much less whether it is even advisable for [her daughter]," and found that "there is no evidence that [the mother] could in any manner participate in the treatment and services [her daughter] requires." Ultimately focusing on the best interests of the daughter, and not the mother, and noting the daughter's need for long-term therapeutic care, the court specifically found that it is not in the daughter's best interests to remain tied to her mother "simply because a favorable permanent placement option has not yet been developed."

4.      The mother now argues that the superior court's best interests finding is clearly erroneous because expert testimony demonstrated that (1) she had made considerable progress, was ready for family therapy, and did have skills to begin to help her daughter, and (2) her daughter's residential inpatient program would have a family component and most such programs desire a parent figure involved in treatment. She also notes that she had been prohibited from having any contact with her daughter for many months before the termination trial, and that other testimony could support a finding that termination might not be in her daughter's best interests. Finally, citing *In re M.S.*,[6] the mother argues that "when a child is going to be in a therapeutic setting for a lengthy period of time, and when allowing the parents' rights to remain intact does not negatively impact the child, it is in the child's best interests to defer a finding regarding termination of parental rights." The mother asserts that maintaining her parental rights would not

---

[6]      898 N.E.2d 307 (Ind. App. 2008).

impact the child's status and treatment because the no-contact order between mother and child in effect at the time of trial would remain in effect until the court determines that contact would be beneficial for the child.

5. In *In re M.S.* a mother voluntarily sought assistance from the Department of Child Services (DCS) because she was unable to control her special needs son or protect her other child from him.[7] It was undisputed that the problem was neither the mother's parenting skills or love for her children, nor her compliance with DCS's suggested services; it was the child's special needs.[8] After the trial court terminated the mother's parental rights the appellate court reversed, concluding that it was not in the child's best interests to terminate the parent-child relationship at that time: "Rather than taking the radical action of severing the parent-child bond prematurely, DCS and the courts should be focused on helping [the child] to become stabilized and reevaluating his best interests when and if stabilization occurs."[9]

We agree with OCS that *In re M.S.* is easily distinguishable from the present case; here, it was the mother's physical abuse of the child — and not the child's behavior — that created the need for OCS intervention. And here OCS remained involved because the mother refused to cooperate with OCS and failed to comply with the safety plan. Because the daughter's difficulties in large part result from the mother's parenting deficiencies, which the superior court found she had not remedied, we see no advantage to the daughter in keeping her mother's rights intact until further notice.[10] The

---

[7]    *Id.* at 309.

[8]    *Id.* at 311-12.

[9]    *Id.* at 314.

[10]    *See Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1278 n.48 (Alaska 2014) (distinguishing *In re M.S.* by noting that

evidence supports the superior court's finding that "it is more probable than not that [the mother] will not be able to have a healthy relationship with [the child] at this time or any foreseeable time in the future."

In essence the mother is asking us to reweigh the evidence and come to a different result. But we review the superior court's factual findings for clear error. We do not reweigh the evidence; we only examine whether the record supports the superior court's ruling.[11] Because the record supports the superior court's ruling, we conclude that the superior court did not clearly err in finding by a preponderance of the evidence that termination of the mother's rights was in the child's best interests.

6. We AFFIRM the superior court's termination decision.

---

mother in *In re M.S.* voluntarily sought assistance, had no substance abuse problems, and "did everything that was asked of her," while "the superior court made clear findings on Sherry's deficiencies as a parent, her lack of timely remedial efforts, and her lack of progress in the services she did engage in").

[11]     *See Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (citations omitted).